JUDGE JONES

**05 CV 6734**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
FLORENCE COHEN,

        Plaintiff,

    --against--

TAKE-TWO INTERACTIVE
SOFTWARE, INC. and ROCKSTAR
GAMES, INC.,

        Defendants.
-------------------------------------------------------x

CIV NO.

**JURY TRIAL DEMANDED**

RECEIVED JUL 27 2005 U.S.D.C. S.D. N.Y. CASHIERS

## CLASS ACTION COMPLAINT

    Plaintiff, for her Complaint, alleges upon personal knowledge as to herself and her own acts and on information and belief as to all other matters, as follows:

### NATURE OF THE CLAIM

    1.    Defendants are developers and marketers of video games which are widely popular with children and teens. Among their best-selling games is "Grand Theft Auto: San Andreas" (hereinafter, "San Andreas"), an action game which sold over 12 million copies in the past nine months.

    2.    In or about late 2004 Plaintiff purchased a copy of San Andreas for her grandson, who is a teenage minor. At the time, San Andreas had been rated "M" by the Entertainment Software Ratings Board ("ESRB") an industry self-regulatory organization. An "M" rating signifies that the game contains some mature content, but no sexually explicit content such as would merit an "AO" rating, which represents a finding by the ESRB that the title is approved for sales to "Adults Only."

3. In July 2005 an investigation by the ESRB revealed that the ESRB had been deceived into bestowing the "M" rating on San Andreas. In truth, San Andreas contains "hidden" content which can be readily and easily accessed by teens and even younger children using simple software available over the Internet. The ESRB, which has reviewed 10,000 video titles over many years without encountering material deception, immediately revoked the "M" rating it had given San Andreas, replacing it with an "AO" rating. Mass market retailers including Wal-Mart, Circuit City and Best Buy promptly pulled San Andreas from their shelves. Plaintiff, who paid a substantial sum for San Andreas, has directed that the game be removed from her grandson's custody, and this has been done.

4. As a result of the foregoing, Plaintiff has been damaged, and seeks damages under the Class Action Fairness Act of 2005, 28 U.S.C. §1332 (d) on behalf of herself and all consumers nationwide who purchased San Andreas and who have been deceived and misled by Defendants' acts, which include unfair business practices, consumer deception, and false advertising. Moreover, defendants have been unjustly enriched by their wrongful acts.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332 (d). The strictures of Section 1332(d) are met in that both Defendants are citizens of New York and Delaware and members of the Class alleged herein include persons who are citizens of states other than New York and Delaware. The sum or value of the amount in controversy exceeds $5 million, exclusive of interest and costs.

6. Venue is proper in this District under 28 U.S.C. § 1391(a). Defendants maintain their principal places of business within the Southern District of New York, and many of the acts and transactions which form the basis of the Complaint occurred in this District and Defendants, in connection with their wrongful conduct, employed the means and instrumentalities of interstate commerce.

## SUBSTANTIVE ALLEGATIONS

7. Defendants Take-Two Interactive Software, Inc. ("Take Two") and its wholly-owned subsidiary Rockstar Games, Inc. ("Rockstar") develop and market video games aimed primarily at teenagers, and younger children. Their popular "Grand Theft Auto" series includes numerous titles. San Andreas was released to the public in or about October 2004, and was carried for sale by the nation's largest chain retailers, among others. San Andreas is available in a variety of formats, and can be played on PC, Xbox, and PlayStation 2. Over 12 million copies of San Andreas have been sold since its introduction.

8. The video game industry is largely self-regulating. Games are submitted by game makers like Defendants for review and rating to the Entertainment Software Ratings Board ("ESRB"). The ESRB is a self-regulatory body for the interactive entertainment software industry established in 1994 by the Entertainment Software Association (ESA), formerly the Interactive Digital Software Association (IDSA). ESRB independently applies and enforces ratings, advertising guidelines, and online privacy principles adopted by the computer and video game industry.

9. Over the past 11 years, over 550 manufacturers have submitted their products to the ESRB for ratings. Of the 1,036 game ratings assigned in 2004 fewer than

1% of all games received an "AO" or Adults Only rating. Game designers ordinarily will not make AO games because stores will not stock them, and parents and other relatives (who purchase such games for teenage and younger children) will not buy them. The ESRB website receives over 6.8 million visitors a year. ESRB ratings have two parts: rating symbols that suggest what age group the game is best for, and content descriptors that indicate elements in a game that may have triggered a particular rating and/or may be of interest or concern.

10.  Prior to its marketing, San Andreas was submitted to the ESRB for review and rating. Defendants did not tell the ESRB that the game contains hidden sexually explicit content, which can be easily accessed by children through the download of software widely available over the Internet. Had this been known, San Andreas would have received an AO rating.

11.  Plaintiff purchased San Andreas for her teenage grandson in or about late 2004. Plaintiff was unaware that that San Andreas contained sexually inappropriate content, and would not have purchased San Andreas had she known this, or had San Andreas been labeled "AO."

12.  On July 20, 2005 the ESRB announced that it had been deceived into granted the "M" rating to San Andreas and immediately revoked that rating. "After a thorough investigation, we have concluded that sexually explicit material exists in a fully rendered, unmodified form on the final discs of all three platform versions of the game (i.e., PC CD-ROM, Xbox and PS2)," said Patricia Vance, president of the ESRB in a press release issued that day. Ms. Vance also stated that: "Considering the existence of the undisclosed and highly pertinent content on the final discs, compounded by the broad

distribution of the third party modification, the credibility and utility of the initial ESRB rating has been seriously undermined." Other industry observers also commented on the deception. The ratings board "has been in business for 11 years, **and there has never yet been an incident of this kind,**" said Doug Lowenstein, head of the Entertainment Software Assn., the industry's trade group.

13. With San Andreas now rated AO, major retailers withdrew the game from their shelves. The Defendants, however, offered no refunds or exchanges.

14. On July 26, 2005 Defendant Take Two announced that the Federal Trade Commission's Division of Advertising Practices had commenced an investigation into claims made about San Andreas.

## CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of a Class consisting of all persons nationwide who purchased San Andreas from the date of its introduction through July 20, 2005.

16. The members of the Class are so numerous that joinder of all members is impracticable. Millions of copies of San Andreas have been sold throughout the United States. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class.

17. Plaintiff's claims are typical of the claims of the members of the Class. All members of the Class are similarly affected by Defendants' unlawful conduct that is complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of

the Class and has retained counsel competent and experienced in class action litigation.

19. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the Defendants deceived Plaintiff and the class in violation of applicable consumer laws;

    b. whether the Defendants disseminated false and misleading advertising in violation of applicable consumer statutes;

    c. to what extent the members of the Class have sustained damages and the proper measure of damages;

    d. to what extent Defendants have been unjustly enriched by the wrongful conduct alleged herein and the sum of the unjust enrichment that should be disgorged.

20. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION
### (Consumer Deception)

21. Plaintiff incorporates by reference all previous allegations.

22. By failing to adequately disclose the nature of San Andreas and performing other acts, including deceiving the widely relied upon ESRB, Defendants

have engaged in consumer deception under statutes applicable to members of the Class including, but not limited to, N.Y. Gen. Bus. Law § 349.

23. As a result of the foregoing, Plaintiff and all class members have been injured in that they were deceived into purchasing a product marketing by Defendants in circumstances involving the uniform omission and misrepresentation of material facts.

## SECOND CAUSE OF ACTION
### (False Advertising)

24. Plaintiff incorporates by reference all previous allegations.

25. By failing to adequately disclose the nature of San Andreas and performing other acts, including deceiving the widely relied upon ESRB, Defendants have engaged in actionable false advertising under statutes applicable to members of the Class including, but not limited to, N.Y. Gen. Bus. Law § 350.

26. As a result of the foregoing, Plaintiff and all class members have been injured in that they were deceived into purchasing a product marketing by Defendants in circumstances involving the uniform omission and misrepresentation of material facts.

## THIRD CAUSE OF ACTION
### (Common Law Fraud)

27. Plaintiff incorporates by reference all previous allegations.

28. By failing to adequately disclose the nature of San Andreas and performing other acts, including deceiving the widely relied upon ESRB, Defendants have engaged in common law fraud.

29. As a result of the foregoing, Plaintiff and all class members have been injured in that they were deceived into purchasing a product marketing by Defendants in circumstances involving the uniform omission and misrepresentation of material facts.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

30.  Plaintiff incorporates by reference all previous allegations.

31.  By failing to adequately disclose the nature of San Andreas and performing other acts, including deceiving the widely relied upon ESRB, Defendants have been unjustly enriched through the receipt of profits they otherwise would not have enjoyed.

32.  As a result of the foregoing, Plaintiff and all class members have been injured in that they were deceived into purchasing a product marketing by Defendants in circumstances involving the uniform omission and misrepresentation of material facts, and Defendants have been correspondingly unjustly enriched.  Defendants must disgorge all such unjust profits.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A.  Declaring that the defendants' false, misleading, and deceptive practices caused injury and damages to Plaintiff and Class members in an amount to be determined at trial;

B.  Declaring that the defendants' practices violated N.Y. GBL § 349, and similar consumer deception statutes under which Class members may pursue claims;

C.  Declaring that the defendants' practices violated N.Y. GBL § 350, and similar false advertising statutes under which Class members may pursue claims;

D.  Declaring that the defendants' practices constituted common law fraud;

E.  Declaring that the defendants' practices constituted unjust enrichment;

8

  F. Awarding Plaintiff damages in an amount to be determined at trial;

  G. Awarding Plaintiff punitive damages in an amount to be determined at trial, but no less than treble the amount of hidden fees Defendants have unlawfully collected;

  H. Granting Plaintiff the costs of suit, interest and reasonable attorneys' and experts' fees; and

  I. Granting such other and further relief as the Court may deem just deem just and proper.

Dated: New York, New York
   July 27, 2005

            Respectfully Submitted,

            */s/ Laurence D. Paskowitz*
            Laurence D. Paskowitz
            Paskowitz & Associates
            60 East 42nd Street—46th Floor
            New York, New York 10165
            Telephone: (212) 685-0969
            Facsimile: (212) 685-2306

            Classattorney@aol.com

            ROY JACOBS & ASSOCIATES
            Roy L. Jacobs
            60 East 42nd Street
            46th Floor
            New York, NY 10165
            Telephone: (212) 867-1156
            Facsimile: (212) 504-8343

            Rljacobs@pipeline.com